**APPEAL, CLOSED, APPEAL_NAT, DISMISSED**

# U.S. Bankruptcy Court
## Southern District of Texas (Houston)
## Adversary Proceeding #: 21-03909

*Assigned to:* Bankruptcy Judge Marvin Isgur
*Lead BK Case:* 19-35133
*Lead BK Title:* Alta Mesa Resources, Inc. and
Cimarron Express Pipeline, LLC
*Lead BK Chapter:* 11
*Demand:* $139000000

*Date Filed:* 09/10/21
*Date Terminated:* 10/01/24

*Nature[s] of Suit:*  13 Recovery of money/property - 548 fraudulent transfer
14 Recovery of money/property - other

### *Plaintiff*
------------------------

**David Dunn**
700 Canal Street
Suite 12E
Stamford, CT 06902

represented by **Joseph R. Dunn**
Covington & Burling LLP
1999 Avenue of the Stars
Ste 3500
Los Angeles, CA 90067
424-332-4825
Email: jdunn@cov.com

**Abigail V. O'Brient**
Covington & Burling LLP
1999 Avenue of the Stars
Ste 3500
Los Angeles, CA 90067
424-332-4826
Email: aobrient@cov.com
*LEAD ATTORNEY*

V.

### *Defendant*

------------------------

**HPS Investment Partners, LLC**   represented **Christopher Darnell Porter**
by Quinn, Emanuel, Urquhart & Sullivan, LLP
700 Louisiana Street
Suite 3900
Houston, TX 77002
713-221-7007
Fax : 713-221-7100
Email: chrisporter@quinnemanuel.com

**Karl S Stern**
Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street
Suite 3900
Houston, TX 77002-2841
713-221-7000
Fax : 713-221-7100
Email: karlstern@quinnemanuel.com

*Defendant*

------------------------

**ARM Energy Holdings, LLC**   represented **Mark D Sherrill**
by Eversheds Sutherland (US) LLP
1001 Fannin
Suite 3700
Houston, TX 77002
713-470-6100
Fax : 713-654-1301
Email: marksherrill@eversheds-sutherland.com

*Defendant*

------------------------

**ARM Midstream, LLC**   represented **Mark D Sherrill**
by (See above for address)

*Defendant*

------------------------

**Asset Risk Management, LLC**   represented **Mark D Sherrill**
by (See above for address)

000002

| Filing Date | # | Docket Text |
|---|---|---|
| 09/10/2021 | 1<br>(23 pgs; 2 docs) | Adversary case 21-03909. Nature of Suit: (13 (Recovery of money/property - 548 fraudulent transfer)),(14 (Recovery of money/property - other) Complaint by David Dunn against HPS Investment Partners, LLC, ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC. Fee Amount $350 (Attachments: # 1 Adversary Proceeding Cover Sheet) (Dunn, Joseph) (Entered: 09/10/2021) |
| 09/16/2021 | 2<br>(2 pgs) | Order for Conference Pre-Trial Conference set for 11/1/2021 at 11:00 AM at telephone and video conference. (LinhthuDo) (Entered: 09/16/2021) |
| 09/18/2021 | 3<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):2 Order for Conference) No. of Notices: 1. Notice Date 09/18/2021. (Admin.) (Entered: 09/18/2021) |
| 09/24/2021 | 4<br>(3 pgs) | Notice of Appearance Pro Hac Vice. Filed by David Dunn (Dunn, Joseph) (Entered: 09/24/2021) |
| 09/24/2021 | 5<br>(8 pgs) | Request for Issuance of Summons on HPS Investment Partners, LLC; ARM Energy Holdings LLC; ARM Midstream, LLC; and Asset Risk Management, LLC. (Dunn, Joseph) (Entered: 09/24/2021) |
| 09/28/2021 | 6<br>(8 pgs) | Summons Issued on ARM Energy Holdings, LLC Date Issued 9/28/2021; ARM Midstream, LLC Date Issued 9/28/2021; Asset Risk Management, LLC Date Issued 9/28/2021; HPS Investment Partners, LLC Date Issued 9/28/2021. (ckrus) (Entered: 09/28/2021) |
| 09/28/2021 | 7<br>(2 pgs) | Summons Service Executed on HPS Investment Partners, LLC 9/28/2021. (Dunn, Joseph) (Entered: 09/28/2021) |
| 09/28/2021 | 8<br>(2 pgs) | Summons Service Executed on ARM Energy Holdings, LLC 9/28/2021. (Dunn, Joseph) (Entered: 09/28/2021) |
| 09/28/2021 | 9<br>(2 pgs) | Summons Service Executed on ARM Midstream, LLC 9/28/2021. (Dunn, Joseph) (Entered: 09/28/2021) |
| 09/28/2021 | 10<br>(2 pgs) | Summons Service Executed on Asset Risk Management, LLC 9/28/2021. (Dunn, Joseph) (Entered: 09/28/2021) |
| 09/28/2021 | 11<br>(2 pgs) | Certificate of Service (Filed By David Dunn ).(Related document(s):2 Order for Conference) (Dunn, Joseph) (Entered: 09/28/2021) |
| 10/19/2021 | 12<br>(8 pgs; 2 docs) | Stipulation By David Dunn and Defendants HPS Investment Partners, LLC, ARM Energy Holdings, LLC; ARM Midstream; LLC; and Asset Risk Management, LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By David Dunn ). (Attachments: # 1 Certificate of Service) (Dunn, Joseph) (Entered: 10/19/2021) |

| | | |
|---|---|---|
| 10/20/2021 | 🌐 13<br>(6 pgs) | Stipulation to Stay Adversary Proceeding and Adjourn Scheduling Conference and Related Dates, Signed on 10/20/2021 (Related document(s):2 Order for Conference) **Pre-Trial Conference scheduled for 4/6/2022 at 10:00 AM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 10/20/2021) |
| 10/21/2021 | 🌐 14<br>(2 pgs) | Certificate *of Service by First-Class Mail and E-Mail* (Filed By David Dunn ).(Related document(s):13 Order Setting Hearing) (Dunn, Joseph) (Entered: 10/21/2021) |
| 10/22/2021 | 🌐 15<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):13 Order Setting Hearing) No. of Notices: 1. Notice Date 10/22/2021. (Admin.) (Entered: 10/22/2021) |
| 02/22/2022 | 🌐 16<br>(7 pgs; 2 docs) | Stipulation By David Dunn and Defendant HPS Investment Partners, LLC, Defendants ARM Energy Holdings, LLC; ARM Midstream, LLC; and Asset Risk Management, LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By David Dunn ).(Related document(s):2 Order for Conference, 12 Stipulation, 13 Order Setting Hearing) (Attachments: # 1 Certificate of Service) (Dunn, Joseph) (Entered: 02/22/2022) |
| 02/23/2022 | 🌐 17<br>(5 pgs) | Joint Scheduling Stipulation, Signed on 2/23/2022 (Related document(s):1 Complaint, 2 Order for Conference, 16 Stipulation) **Hearings scheduled for 5/25/2022 at 09:00 AM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 02/23/2022) |
| 02/25/2022 | 🌐 18<br>(6 pgs) | BNC Certificate of Mailing. (Related document(s):17 Order Setting Hearing) No. of Notices: 1. Notice Date 02/25/2022. (Admin.) (Entered: 02/25/2022) |
| 03/07/2022 | 🌐 19<br>(28 pgs; 2 docs) | Motion to Dismiss Party */Motion of ARM Defendants to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)*. Objections/Request for Hearing Due in 21 days. Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC (Attachments: # 1 Proposed Order) (Sherrill, Mark) (Entered: 03/07/2022) |
| 03/07/2022 | 🌐 20<br>(129 pgs; 4 docs) | Motion to Dismiss Adversary Proceeding. Objections/Request for Hearing Due in 21 days. Filed by HPS Investment Partners, LLC Hearing scheduled for 5/25/2022 at 09:00 AM at Houston, Courtroom 404 (MI). (Attachments: # 1 Declaration of Karl S. Stern in Support of Rule 12(b)(6) Motion to Dismiss the Complaint on Behalf of HPS Investment Partners, LLC # 2 Exhibit 1 # 3 Proposed Order) (Porter, Christopher) (Entered: 03/07/2022) |
| 04/04/2022 | 🌐 21<br>(7 pgs; 2 docs) | Stipulation By David Dunn and Defendant HPS Investment Partners, LLC, Defendants ARM Energy Holdings, LLC; ARM Midstream, LLC; and Asset Risk Management, LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By David Dunn ).(Related document(s):17 Order Setting Hearing) (Attachments: # 1 Certificate of Service) (Dunn, Joseph) (Entered: 04/04/2022) |
| 04/04/2022 | 🌐 22<br>(47 pgs; 3 docs) | Opposition Response *(Plaintiff's Omnibus Opposition to Motions of ARM Defendants and HPS Investment Partners, LLC to Dismiss Complaint [Dkt. 19, 20])* (related document(s):19 Motion to Dismiss Party, 20 |

| | | |
|---|---|---|
| | | Motion to Dismiss Adversary Proceeding). Filed by David Dunn (Attachments: # 1 Proposed Order Denying Motions of ARM Defendants and HPS Investment Partners, LLC to Dismiss Complaint [Dkt. 19, 20] # 2 Certificate of Service) (Dunn, Joseph) (Entered: 04/04/2022) |
| 04/06/2022 | 23 (5 pgs) | Stipulation to Continue Hearing on Defendants' Motions to Dismiss and Scheduling Conference, Signed on 4/6/2022 (Related document(s):2 Order for Conference, 19 Motion to Dismiss Party, 20 Motion to Dismiss Adversary Proceeding) **Hearing scheduled for 6/8/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 04/06/2022) |
| 04/08/2022 | 24 (7 pgs) | BNC Certificate of Mailing. (Related document(s):23 Order Setting Hearing) No. of Notices: 1. Notice Date 04/08/2022. (Admin.) (Entered: 04/08/2022) |
| 05/02/2022 | 25 (20 pgs) | Reply *in Support of Rule 12(b)(6) Motion to Dismiss the Complaint on Behalf of HPS Investment Partners, LLC* (related document(s):20 Motion to Dismiss Adversary Proceeding). Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 05/02/2022) |
| 05/02/2022 | 26 (15 pgs) | Reply *in Support of ARM Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* (related document(s):19 Motion to Dismiss Party). Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC (Sherrill, Mark) (Entered: 05/02/2022) |
| 06/01/2022 | 27 (14 pgs; 2 docs) | Joint Discovery Plan/Case Management Plan (Filed By David Dunn ). (Attachments: # 1 Certificate of Service) (Dunn, Joseph) (Entered: 06/01/2022) |
| 06/06/2022 | 28 (86 pgs; 4 docs) | Exhibit List (Filed By David Dunn ). (Attachments: # 1 Exhibit 1 (Plaintiff's Complaint) # 2 Exhibit 2 (First Amended Complaint) # 3 Certificate of Service) (Dunn, Joseph) (Entered: 06/06/2022) |
| 06/06/2022 | 29 (1 pg) | Motion to Appear pro hac vice *for Benjamin I. Finestone*. Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 06/06/2022) |
| 06/06/2022 | 30 (1 pg) | Motion to Appear pro hac vice *for Courtney C. Whang*. Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 06/06/2022) |
| 06/07/2022 | 31 (1 pg) | Order Granting Motion to Appear *pro hac vice* - Benjamin I. Finestone (Related Doc # 29) Signed on 6/7/2022. (TylerLaws) (Entered: 06/07/2022) |
| 06/07/2022 | 32 (1 pg) | Order Granting Motion to Appear *pro hac vice* - Courtney C. Whang (Related Doc # 30) Signed on 6/7/2022. (TylerLaws) (Entered: 06/07/2022) |

| | | |
|---|---|---|
| 06/08/2022 | ⬤33 | Courtroom Minutes. Time Hearing Held: 1:30 pm - 2:53 pm. Appearances: Ben Finestone, Chris Porter, and Courtney Whang for defendant HPS Investment Partners, LLC. David Baay for defendants ARM Energy Holdings, LLC, ARM Midstream, LLC and Asset Risk Management, LLC. Joseph Dunn for the Plaintiff. Amended complaint to be filed by 7/11/22 that meets rule 9 as stated on the record. Answer date will run from the date the complaint is filed. (Related document(s):2 Order for Conference, 19 Motion to Dismiss Party, 20 Motion to Dismiss Adversary Proceeding) (TylerLaws) Modified on 6/8/2022 (TylerLaws). (Entered: 06/08/2022) |
| 06/08/2022 | ⬤34 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 6/8/2022 1:27:22 PM ]. File Size [ 41271 KB ]. Run Time [ 01:25:59 ]. (admin). (Entered: 06/08/2022) |
| 06/09/2022 | ⬤35 (3 pgs) | BNC Certificate of Mailing. (Related document(s):31 Order on Motion to Appear pro hac vice) No. of Notices: 1. Notice Date 06/09/2022. (Admin.) (Entered: 06/09/2022) |
| 06/09/2022 | ⬤36 (3 pgs) | BNC Certificate of Mailing. (Related document(s):32 Order on Motion to Appear pro hac vice) No. of Notices: 1. Notice Date 06/09/2022. (Admin.) (Entered: 06/09/2022) |
| 07/11/2022 | ⬤37 (3 pgs) | Notice *of Appearance*. Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 07/11/2022) |
| 07/11/2022 | ⬤38 (1 pg) | Motion to Appear pro hac vice *for Michael B. Carlinsky*. Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 07/11/2022) |
| 07/11/2022 | ⬤39 (1 pg) | Motion to Appear pro hac vice *for Jacob J. Waldman*. Filed by HPS Investment Partners, LLC (Porter, Christopher) (Entered: 07/11/2022) |
| 07/11/2022 | ⬤40 (255 pgs; 9 docs) | First Amended Complaint (Related document(s):1 Complaint) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit) (Dunn, Joseph) (Entered: 07/11/2022) |
| 07/12/2022 | ⬤41 (1 pg) | Order Granting Motion to Appear *pro hac vice* - Michael B. Carlinsky (Related Doc # 38) Signed on 7/12/2022. (TylerLaws) (Entered: 07/12/2022) |
| 07/12/2022 | ⬤42 (1 pg) | Order Granting Motion to Appear *pro hac vice* - Jacob J. Waldman (Related Doc # 39) Signed on 7/12/2022. (TylerLaws) (Entered: 07/12/2022) |
| 07/14/2022 | ⬤43 (3 pgs) | BNC Certificate of Mailing. (Related document(s):41 Order on Motion to Appear pro hac vice) No. of Notices: 1. Notice Date 07/14/2022. (Admin.) (Entered: 07/14/2022) |
| 07/14/2022 | ⬤44 (3 pgs) | BNC Certificate of Mailing. (Related document(s):42 Order on Motion to Appear pro hac vice) No. of Notices: 1. Notice Date 07/14/2022. (Admin.) (Entered: 07/14/2022) |

| | | |
|---|---|---|
| 07/18/2022 | 45<br>(5 pgs) | Stipulation By HPS Investment Partners, LLC and David Dunn, as Trustee of the AMH Litigation Trust; Defendants ARM Energy Holdings, LLC; ARM Midstream, LLC; and Asset Risk Management, LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By HPS Investment Partners, LLC ). (Related document(s):40 Amended Complaint) (Porter, Christopher) (Entered: 07/18/2022) |
| 07/19/2022 | 46<br>(5 pgs) | Joint Scheduling Stipulation, Signed on 7/19/2022 (Related document(s):40 Amended Complaint, 45 Stipulation) **Hearing scheduled for 11/16/2022 at 01:30 PM at Houston, Courtroom 404 (MI).** (TylerLaws) (Entered: 07/19/2022) |
| 07/21/2022 | 47<br>(7 pgs) | BNC Certificate of Mailing. (Related document(s):46 Order Setting Hearing) No. of Notices: 1. Notice Date 07/21/2022. (Admin.) (Entered: 07/21/2022) |
| 08/25/2022 | 48<br>(33 pgs; 2 docs) | Motion to Dismiss Adversary Proceeding. Objections/Request for Hearing Due in 21 days. Filed by HPS Investment Partners, LLC Hearing scheduled for 11/16/2022 at 01:30 PM at Houston, Courtroom 404 (MI). (Attachments: # 1 Proposed Order) (Porter, Christopher) (Entered: 08/25/2022) |
| 08/25/2022 | 49<br>(30 pgs; 2 docs) | Motion to Dismiss Adversary Proceeding. Objections/Request for Hearing Due in 21 days. Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC Hearing scheduled for 11/16/2022 at 01:30 PM at Houston, Courtroom 404 (MI). (Attachments: # 1 Proposed Order) (Sherrill, Mark) (Entered: 08/25/2022) |
| 08/29/2022 | 50<br>(1 pg) | Certificate of Serivce (Filed By ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC ).(Related document(s):49 Motion to Dismiss Adversary Proceeding) (Sherrill, Mark) (Entered: 08/29/2022) |
| 09/08/2022 | 51<br>(1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Joseph Dunn. This is to order a transcript of Motion to Dismiss Hearing on 6/8/2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Ornelas Reporting (Filed By David Dunn ). (Dunn, Joseph) Copy request electronically forwarded to Ornelas Reporting on 9/8/2022. Estimated completion date: 9/15/22. Modified on 9/8/2022 (BrandisIsom). (Entered: 09/08/2022) |
| 10/03/2022 | 52<br>(46 pgs; 2 docs) | Opposition Response *(Plaintiff's Omnibus Opposition To Motions Of ARM Defendants And HPS Investment Partners, LLC To Dismiss First Amended Complaint [Dkts. 48, 49])* (related document(s):48 Motion to Dismiss Adversary Proceeding, 49 Motion to Dismiss Adversary Proceeding). Filed by David Dunn (Attachments: # 1 Proposed Order Denying Motions Of ARM Defendants And HPS Investment Partners, LLC To Dismiss First Amended Complaint [Dkts. 48, 49]) (Dunn, Joseph) (Entered: 10/03/2022) |
| 10/03/2022 | 53<br>(61 pgs; 2 docs) | Response *(Request For Judicial Notice In Support Of Plaintiff's Omnibus Opposition To Motions Of ARM Defendants And HPS Investment Partners, LLC To Dismiss First Amended Complaint [Dkts. 48, 49])* (related document(s):48 Motion to Dismiss Adversary Proceeding, 49 Motion to Dismiss Adversary Proceeding). Filed by David Dunn (Attachments: # 1 Proposed Order Granting Request For Judicial Notice |

| | | In Support Of Plaintiffs Omnibus Opposition To Motions Of ARM Defendants And HPS Investment Partners, LLC To Dismiss First Amended Complaint [Dkts. 48, 49]) (Dunn, Joseph) (Entered: 10/03/2022) |
|---|---|---|
| 10/04/2022 | 54 (2 pgs) | Certificate *of Service* (Filed By David Dunn ).(Related document(s):52 Response, 53 Response) (Dunn, Joseph) (Entered: 10/04/2022) |
| 10/28/2022 | 55 (23 pgs) | Reply *in Support of Rule 12(b)(6) Motion to Dismiss the Amended Complaint on Behalf of HPS Investment Partners, LLC* (related document(s):48 Motion to Dismiss Adversary Proceeding). Filed by HPS Investment Partners, LLC (Stern, Karl) (Entered: 10/28/2022) |
| 10/28/2022 | 56 (16 pgs) | Reply *in Support of ARM Defendants' Rule 12(b)(6) Motion to Dismiss the First Amended Complaint* (related document(s):49 Motion to Dismiss Adversary Proceeding). Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC (Sherrill, Mark) (Entered: 10/28/2022) |
| 11/14/2022 | 57 (357 pgs; 5 docs) | Exhibit List (Filed By David Dunn ).(Related document(s):52 Response) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit) (Dunn, Joseph) (Entered: 11/14/2022) |
| 11/14/2022 | 58 (2 pgs) | Certificate *Certificate of Service Plaintiff's Exhibit List* (Filed By David Dunn ).(Related document(s):57 Exhibit List) (Dunn, Joseph) (Entered: 11/14/2022) |
| 11/14/2022 | 59 (354 pgs; 5 docs) | Exhibit List (Filed By HPS Investment Partners, LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4) (Stern, Karl) (Entered: 11/14/2022) |
| 11/15/2022 | 60 (356 pgs; 5 docs) | Exhibit List (Filed By ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC ). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4) (Sherrill, Mark) (Entered: 11/15/2022) |
| 11/16/2022 | 61 | Courtroom Minutes. Time Hearing Held: 1:30 pm - 2:16 pm. Appearances: Joseph Dunn for the Plaintiff. Ben Finestone and Chris Porter for Defendant and Movant HPS Investment Partners, LLC. Mark Sherril and Jay Patel for the ARM Defendants. The Court takes the matters under advisement as stated on the record. (Related document(s):48 Motion to Dismiss Adversary Proceeding, 49 Motion to Dismiss Adversary Proceeding) (TylerLaws) (Entered: 11/16/2022) |
| 11/16/2022 | 62 (1 pg) | PDF with attached Audio File. Court Date & Time [ 11/16/2022 1:33:47 PM ]. File Size [ 20584 KB ]. Run Time [ 00:42:53 ]. (admin). (Entered: 11/16/2022) |
| 03/03/2023 | 63 (17 pgs) | **Memorandum Opinion,** Signed on 3/3/2023 (Related document(s):40 Amended Complaint, 48 Motion to Dismiss Adversary Proceeding, 49 Motion to Dismiss Adversary Proceeding) (TylerLaws) (Entered: 03/03/2023) |
| 03/03/2023 | 64 (1 pg) | **Order** in 4:21-ap-3909, Signed on 3/3/2023 (TylerLaws) (Entered: 03/03/2023) |

| 03/05/2023 | 65 (19 pgs) | BNC Certificate of Mailing. (Related document(s):63 Opinion) No. of Notices: 1. Notice Date 03/05/2023. (Admin.) (Entered: 03/05/2023) |
| 03/05/2023 | 66 (3 pgs) | BNC Certificate of Mailing. (Related document(s):64 Generic Order) No. of Notices: 1. Notice Date 03/05/2023. (Admin.) (Entered: 03/05/2023) |
| 03/07/2023 | 67 (5 pgs; 2 docs) | Emergency Motion *to Extend Deadline to File Second Amended Complaint* Filed by Plaintiff David Dunn (Attachments: # 1 Proposed Order) (Dunn, Joseph) (Entered: 03/07/2023) |
| 03/08/2023 | 68 (1 pg) | Order Granting Plaintiff's Emergency Motion to Extend Deadline to File Second Amended Complaint (Related Doc # 67) Signed on 3/8/2023. (TylerLaws) (Main Document 68 replaced on 3/8/2023) (TylerLaws). (Entered: 03/08/2023) |
| 03/10/2023 | 69 (3 pgs) | BNC Certificate of Mailing. (Related document(s):68 Order on Emergency Motion) No. of Notices: 1. Notice Date 03/10/2023. (Admin.) (Entered: 03/10/2023) |
| 03/24/2023 | 70 (211 pgs; 2 docs) | Second Amended Complaint (Related document(s):1 Complaint) (Attachments: # 1 Exhibits 1-6) (Dunn, Joseph) (Entered: 03/24/2023) |
| 04/03/2023 | 71 (6 pgs) | Stipulation By HPS Investment Partners, LLC and David Dunn, as Trustee of the AMH Litigation Trust; ARM Energy Holdings, LLC; ARM Midstream, LLC; and Asset Risk Management, LLC. Does this document include an agreed order or otherwise request that the judge sign a document? Yes. (Filed By HPS Investment Partners, LLC ). (Stern, Karl) (Entered: 04/03/2023) |
| 04/04/2023 | 72 (6 pgs) | Joint Scheduling Stipulation, Signed on 4/4/2023 (Related document(s):70 Amended Complaint, 71 Stipulation) (TylerLaws) (Entered: 04/04/2023) |
| 04/06/2023 | 73 (8 pgs) | BNC Certificate of Mailing. (Related document(s):72 Generic Order) No. of Notices: 1. Notice Date 04/06/2023. (Admin.) (Entered: 04/06/2023) |
| 04/24/2023 | 74 (30 pgs; 2 docs) | Motion to Dismiss Adversary Proceeding. Objections/Request for Hearing Due in 21 days. Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC Hearing scheduled for 7/17/2023 at 09:00 AM at Houston, Courtroom 404 (MI). (Attachments: # 1 Proposed Order) (Sherrill, Mark) (Entered: 04/24/2023) |
| 04/24/2023 | 75 (17 pgs) | Motion to Dismiss Adversary Proceeding. Objections/Request for Hearing Due in 21 days. Filed by HPS Investment Partners, LLC Hearing scheduled for 7/17/2023 at 09:00 AM at Houston, Courtroom 404 (MI). (Stern, Karl) (Entered: 04/24/2023) |
| 04/26/2023 | 76 (1 pg) | Certificate *of Service* (Filed By ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC ).(Related document(s):74 Motion to Dismiss Adversary Proceeding) (Sherrill, Mark) (Entered: 04/26/2023) |
| 05/26/2023 | 77 (37 pgs; 2 docs) | Response *Plaintiff's Omnibus Opposition to Motions of ARM Defendants and HPS Investment Partners, LLC to Dismiss Second Amended Complaint [ECF Nos. 74, 75]* (related document(s):74 Motion to Dismiss Adversary Proceeding, 75 Motion to Dismiss Adversary Proceeding). |

|  |  |  |
|---|---|---|
|  |  | Filed by David Dunn (Attachments: # 1 Proposed Order) (Dunn, Joseph) (Entered: 05/26/2023) |
| 06/16/2023 | 78 (11 pgs) | Reply *Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss the Second Amended Complaint on Behalf of HPS Investment Partners, LLC* (related document(s):75 Motion to Dismiss Adversary Proceeding). Filed by HPS Investment Partners, LLC (Stern, Karl) (Entered: 06/16/2023) |
| 06/16/2023 | 79 (17 pgs) | Reply *in Support of ARM Defendants' 12(b)(6) Motion to Dismiss the Second Amended Complaint*. Filed by ARM Energy Holdings, LLC, ARM Midstream, LLC, Asset Risk Management, LLC (Sherrill, Mark) (Entered: 06/16/2023) |
| 07/13/2023 | 80 (313 pgs; 6 docs) | Exhibit List (Filed By David Dunn ).(Related document(s):77 Response) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit) (Dunn, Joseph) (Entered: 07/13/2023) |
| 07/13/2023 | 81 (254 pgs) | Additional Attachments Re: *Plaintiff's Exhibit and Witness List* (related document(s):80 Exhibit List) (Filed By David Dunn ).(Related document(s):80 Exhibit List) (Dunn, Joseph) (Entered: 07/13/2023) |
| 07/14/2023 | 82 (3 pgs) | Exhibit List (Filed By HPS Investment Partners, LLC ). (Stern, Karl) (Entered: 07/14/2023) |
| 07/17/2023 | 83 | Courtroom Minutes. Time Hearing Held: 9:06 AM -9:54 AM. Appearances: Joseph Dunn for the Plaintiff. Jay Patel for the ARM Defendants. Benjamin Finestone and Melanie Guzman for the HPS Investment Partners, LLC Defendant. The Court heard oral argument. The Court gave its preliminary intended ruling on the record but may reconsider that ruling. The matter is taken under advisement. The Court will issue a written ruling. (Related document(s):74 Motion to Dismiss Adversary Proceeding, 75 Motion to Dismiss Adversary Proceeding) (SierraThomasAnderson) (Entered: 07/17/2023) |
| 07/17/2023 | 84 (1 pg) | PDF with attached Audio File. Court Date & Time [ 7/17/2023 9:06:46 AM ]. File Size [ 22824 KB ]. Run Time [ 00:47:33 ]. (admin). (Entered: 07/17/2023) |
| 07/17/2023 | 85 (1 pg) | PDF with attached Audio File. Court Date & Time [ 7/17/2023 9:06:46 AM ]. File Size [ 22824 KB ]. Run Time [ 00:47:33 ]. (admin). (Entered: 07/17/2023) |
| 07/19/2023 | 86 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Melanie Guzman. This is to order a transcript of Motion to Dismiss 7/17/2023 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By HPS Investment Partners, LLC ). (Porter, Christopher) Electronically Forwarded to Veritext Legal Solutions on 07/20/2023. Estimated Date of Completion: 07/27/2023. Modified on 7/20/2023 (BenjaminRomero). (Entered: 07/19/2023) |
| 07/21/2023 | 87 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Joseph R. Dunn. This is to order a transcript of Motion to Dismiss Hearing on 7/17/2023 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By David Dunn ). (Dunn, Joseph) Copy Request Forwarded to Veritext Legal Solutions on 07/21/2023. Estimated |

| | | |
|---|---|---|
| | | Date of Completion: 07/28/2023. Modified on 7/21/2023 (BenjaminRomero). (Entered: 07/21/2023) |
| 07/27/2023 | 🔵 88 (39 pgs) | Transcript RE: motion to dismiss held on 7/17/23 before Judge Marvin Isgur. Transcript is available for viewing in the Clerk's Office. Filed by Transcript access will be restricted through 10/25/2023. (VeritextLegalSolutions) (Entered: 07/27/2023) |
| 07/28/2023 | 🔵 89 (1 pg) | Notice of Filing of Official Transcript as to 88 Transcript. Parties notified (Related document(s):88 Transcript) (MayraMarquez) (Entered: 07/28/2023) |
| 07/30/2023 | 🔵 90 (3 pgs) | BNC Certificate of Mailing. (Related document(s):89 Notice of Filing of Official Transcript (Form) No. of Notices: 1. Notice Date 07/30/2023. (Admin.) (Entered: 07/30/2023) |
| 02/07/2024 | 🔵 91 (3 pgs) | Notice of Change of Address Filed by David Dunn (Dunn, Joseph) (Entered: 02/07/2024) |
| 10/01/2024 | 🔵 92 (16 pgs) | **Memorandum Opinion** , Signed on 10/1/2024 (Related document(s):70 Amended Complaint, 74 Motion to Dismiss Adversary Proceeding, 75 Motion to Dismiss Adversary Proceeding) (acj4) (Entered: 10/02/2024) |
| 10/01/2024 | 🔵 93 (1 pg) | Order Dismissing Proceeding, Signed on 10/1/2024 (acj4) (Entered: 10/02/2024) |
| 10/04/2024 | 🔵 94 (18 pgs) | BNC Certificate of Mailing. (Related document(s):92 Opinion) No. of Notices: 1. Notice Date 10/04/2024. (Admin.) (Entered: 10/04/2024) |
| 10/04/2024 | 🔵 95 (24 pgs) | BNC Certificate of Mailing. (Related document(s):93 Order Dismissing Adversary Case) No. of Notices: 1. Notice Date 10/04/2024. (Admin.) (Entered: 10/04/2024) |
| 10/15/2024 | 🔵 96 (44 pgs) | Notice of Appeal filed. (related document(s):63 Opinion, 64 Generic Order, 92 Opinion, 93 Order Dismissing Adversary Case). Fee Amount $298. Appellant Designation due by 10/29/2024. (Dunn, Joseph) (Entered: 10/15/2024) |
| 10/24/2024 | ⚫ 97 | Election to Appeal to District Court . (bwl4) (Entered: 10/24/2024) |
| 10/24/2024 | 🔵 98 (1 pg) | Clerk's Notice of Filing of an Appeal. On 10/15/2024, David Dunn, as Trustee of the AMH Litigation Trust. filed a notice of appeal. The appeal has been assigned to U.S. District Judge Andrew S Hanen, Civil Action 4:24cv4092. Parties notified (Related document(s):96 Notice of Appeal). (bwl4) (Entered: 10/24/2024) |
| 10/26/2024 | 🔵 99 (3 pgs) | BNC Certificate of Mailing. (Related document(s):98 Clerk's Notice of Filing of an Appeal) No. of Notices: 1. Notice Date 10/26/2024. (Admin.) (Entered: 10/26/2024) |
| 10/29/2024 | 🔵 100 (1 pg) | AO 435 TRANSCRIPT ORDER FORM (Expedited (7 days)) by Joseph R. Dunn. This is to order a transcript of Motion to Dismiss Hearing Held on 11/16/2022 before Judge Marvin P. Isgur. Court Reporter/Transcriber: Veritext Legal Solutions (Filed By David Dunn ). (Dunn, Joseph) Electronically forwarded to Veritext Legal Solutions on 10/30/2024. |

| | | Estimated completion date: 11/6/2024. Modified on 10/30/2024 (hem4). (Entered: 10/29/2024) |
|---|---|---|
| 10/29/2024 | 🌑 101<br>(6 pgs) | Statement of Issues on Appeal (related document(s):96 Notice of Appeal, 97 Election to Appeal). (Dunn, Joseph) (Entered: 10/29/2024) |
| 11/04/2024 | 🌑 102<br>(1 pg) | ***DOCKETED IN ERROR*** Notice of Deficiency Regarding a Bankruptcy Appeal (Related document(s):96 Notice of Appeal) (hl4) Additional attachment(s) added on 11/5/2024 (HortenciaLerma).Modified on 11/6/2024 (SierraThomasAnderson). (Entered: 11/04/2024) |
| 11/06/2024 | 🌑 103<br>(33 pgs; 2 docs) | Transcript RE: held on 11/16/22 before Judge MARVIN ISGUR. Transcript is available for viewing in the Clerk's Office. Within 21 days, parties are advised to comply with privacy requirements of Fed. R. Bank. P. 9037, ensuring that certain protected information is redacted from transcripts prior to their availability on PACER. Filed by Transcript access will be restricted through 02/4/2025. (VeritextLegalSolutions) (Entered: 11/06/2024) |
| 11/09/2024 | 🌑 104<br>(3 pgs) | BNC Certificate of Mailing. (Related document(s):103 Transcript) No. of Notices: 1. Notice Date 11/09/2024. (Admin.) (Entered: 11/09/2024) |
| 09/10/2021 | | Receipt of Complaint( 21-03909) [cmp,cmp] ( 350.00) Filing Fee. Receipt number A23259017. Fee amount $ 350.00. (U.S. Treasury) (Entered: 09/10/2021) |
| 03/22/2022 | 🌑 | For case management purposes only. Hearing Set On (Related document(s):19 Motion to Dismiss Party) Hearing scheduled for 5/25/2022 at 09:00 AM at Houston, Courtroom 404 (MI). (LinhthuDo) (Entered: 03/22/2022) |
| 10/15/2024 | | Receipt of Notice of Appeal( 21-03909) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A25639731. Fee amount $ 298.00. (U.S. Treasury) (Entered: 10/15/2024) |
| 11/13/2024 | 🌑 | Appeal 96 is ready to be transmitted the District Court. The appellant's designation of record was filed with the statement of issues (hl4) (Entered: 11/13/2024) |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| ALTA MESA RESOURCES, INC., *et al.*, | ) |
| | ) Case No. 19-35133 |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| DAVID DUNN, as Trustee of the AMH Litigation Trust, | ) |
| | ) |
| | ) Adv. Pro. No. _____ |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HPS INVESTMENT PARTNERS, LLC; ARM ENERGY HOLDINGS, LLC; ARM MIDSTREAM, LLC; AND ASSET RISK MANAGEMENT, LLC, | ) **Jury Trial Demanded** |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff David Dunn, as Trustee of the AMH Litigation Trust (the "**Trust**" or "**Plaintiff**"), the successor-in-interest to certain causes of action of Alta Mesa Holdings, LP ("**AMH**"), brings this action against HPS Investment Partners, LLC ("**HPS**"), ARM Energy Holdings, LLC ("**ARM Holdings**"), ARM Midstream, LLC ("**ARM Midstream**") and Asset Risk Management, LLC (together with ARM Holdings and ARM Midstream, "**ARM**"; ARM together with HPS, the "**Defendants**").

## INTRODUCTION

1.     AMH was an oil and gas exploration and production company that filed for bankruptcy in September 2019 after losing hundreds of millions of dollars and writing off billions of dollars in assets.  Indeed, after being valued at more than $2.25 billion in early 2018, AMH's

1

000013

assets were sold in 2020 at liquidation prices for less than $200 million, leaving its creditors, the principal beneficiaries of the Trust, holding the bag. Due to the damages sustained by AMH, including from its resulting bankruptcy, creditors with more than $600 million in claims have been left with unpaid debts.

2.      AMH's ultimate demise was precipitated by years of transactions through which AMH's value was methodically stripped away to benefit the Defendants and other equity owners of AMH and Kingfisher Midstream, LLC ("**KFM**") at the expense of AMH's creditors.

3.      While the harmful actions of those equity holders were broad-reaching, this Complaint focuses on a series of transactions preceding the February 2018 business combination that were intended to, and did in fact, divert cash and other assets of AMH to KFM for the benefit of KFM's shareholders, particularly Defendants, who owned a substantial portion of KFM's equity interests.

4.      First, AMH was caused to enter into certain gathering agreements with KFM beginning in 2015, under which KFM and its shareholders reaped the benefits of exorbitant fees charged to AMH for years, and the onerous terms under which AMH agreed to effectively prop up the value of KFM for a potential sale.  Over $125 million was paid by AMH under these agreements during just a three-year period, and Defendants reaped the fruits of their value diversion strategy when they sold KFM in 2018 and received over $800 million in cash.

5.      Second, in connection with the 2018 business combination, AMH assigned all of its remaining non-STACK assets to High Mesa, Inc. ("**HMI**")—the entity through which HPS invested in AMH and KFM.  Despite that these assets were, at the time, generating positive net cash flow and valued in the tens of millions of dollars, AMH did not receive a penny of consideration from HMI or its shareholder, HPS.

000014

6.      Instead, AMH entered into yet another agreement—a management services agreement with HMI—under which AMH, not HMI or its shareholder (HPS), would bear all of the up-front expenses of operating the newly-assigned non-STACK assets of HMI in exchange for only a nominal, below-market management fee and a right of reimbursement.  But HMI did not reimburse AMH.  HMI refused to pay, and ultimately left AMH with over $10 million of debt owed under the agreement, exclusive of interest, before it entered its own bankruptcy proceedings where that debt has remained unpaid.

7.      Through these transactions, the assets and value of AMH were purposefully and methodically diverted away from AMH, for the benefit of Defendants, in the years leading up to the February 9, 2018 business combination.  Defendants' actions all but ensured that AMH would ultimately lack the capital and liquidity to continue operating its business as a going concern. Sure enough, AMH was forced to file for bankruptcy in 2019 and sell its assets at liquidation prices in 2020.

8.      The Trustee, on behalf of the Trust, the successor-in-interest to the causes of action of AMH and its estate asserted herein, now brings this action to recover the substantial damages suffered as a result of transfers made and transactions entered into for the benefit of the Defendants. These transactions, including the obligations incurred by AMH and the transfers made by AMH, constituted fraudulent transfers under applicable bankruptcy and non-bankruptcy law and should be avoided.

## <u>JURISDICTION AND VENUE</u>

9.      This Court has jurisdiction over this case under 28 U.S.C. § 157 and 1334.  This Complaint asserts core and non-core claims under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(2)(H).

10.     This Court also has jurisdiction over this case under 28 U.S.C. §§ 1332 and 1334 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and

3

is between citizens of different states.  David Dunn ("**Dunn**"), the Trustee of the Trust, is a citizen

of Connecticut. On information and belief, Defendants are citizens of New York and Texas, and

no defendant is a citizen of Connecticut.

11.    Venue is proper in this District under 28 U.S.C. § 1409 because AMH's bankruptcy

case is pending in this District.  Further, on information and belief, a substantial part of the events

or omissions giving rise to the claims occurred in this District.

12.    Pursuant to Federal Rule of Bankruptcy Procedure 7008 and Local Rule 7008-1,

the Trust states that it hereby consents to the Bankruptcy Court's entry of final orders and judgment

in this adversary proceeding, including if it is determined that the Bankruptcy Court, absent

consent of the parties, cannot enter final orders or judgment consistent with Article III of the United

States Constitution.

## PARTIES AND RELATED ENTITIES

13.    The Trust was created in connection with the confirmed Chapter 11 plan for Alta

Mesa Resources, Inc., and its AMH and Silver Run debtor affiliates[1] (the "**Bankruptcy Plan**").

Dunn was appointed trustee of the Trust on or about June 8, 2020, the effective date of the

Bankruptcy Plan.

14.    Under the Bankruptcy Plan, causes of action held by AMH and its estate against

certain third parties not released under the Bankruptcy Plan were assigned to the Trust.  The

Bankruptcy Plan specifically provided that AMH did not release its claim against the Defendants

in this action, and that AMH's claims against the Defendants were assigned to the Trust pursuant

---

[1] The debtors in the above-referenced chapter 11 cases are as follows: Alta Mesa Resources, Inc.; Alta Mesa
Holdings, LP; Alta Mesa Holdings GP, LLC; OEM GP, LLC; Alta Mesa Finance Services Corp.; Alta Mesa
Services, LP; Oklahoma Energy Acquisitions, LP; SRII Opco GP, LLC; SRII Opco, LP; Kingfisher
Midstream, LLC; Kingfisher STACK Oil Pipeline, LLC; Oklahoma Produced Water Solutions, LLC; and
Cimarron Express Pipeline, LLC.

to the Bankruptcy Plan and the order confirming the Bankruptcy Plan, for the benefit of the creditor beneficiaries of the Trust.

15. On information and belief, defendant HPS Investment Partners, LLC (formerly known as Highbridge Principal Strategies), is a Delaware limited liability company, with its principal place of business in New York. At all relevant times, HPS was a substantial equity owner of AMH and KFM and identified as one of the "Sponsor Parties" under the Bankruptcy Plan.

16. On information and belief, defendant ARM Energy Holdings LLC is a Delaware limited liability company, with its principal place of business in Texas. At all relevant times, ARM Energy Holdings LLC was an affiliate of defendants ARM Midstream and Asset Risk Management, LLC. ARM was a founder and substantial equity holder of KFM.

17. On information and belief, defendant ARM Midstream, LLC is a Delaware limited liability company, with its principal place of business in Texas. At all relevant times, ARM Midstream, LLC was an affiliate of defendants ARM Holdings and Asset Risk Management, LLC. ARM was a founder and substantial equity holder of KFM.

18. On information and belief, defendant Asset Risk Management, LLC is a Delaware limited liability company, with its principal place of business in Texas. At all relevant times, Asset Risk Management, LLC was an affiliate of defendants ARM Holdings and ARM Midstream. ARM was a founder and substantial equity holder of KFM.

## FACTUAL BACKGROUND

A. **Corporate Structures and Value-Stripping Transactions Leading up to the Business Combination in February 2018**

    a. **AMH Ownership Prior to February 2018**

19. Alta Mesa Holdings, GP, LLC ("**AMH GP**") was the sole general partner of AMH. AMH GP's Board of Managers ("**Board**") conducted business on behalf of AMH. Prior to

February 2018, AMH was owned by its President and CEO Harlan Chappelle ("**Chappelle**"), its COO Michael Ellis ("**Ellis**"), and HMI, a privately held Delaware corporation.

20.     During the relevant time period, HMI was owned by HPS, Chappelle, Ellis and, beginning in 2016, Bayou City Energy Management LLC. Together, Chappelle, Ellis and HMI directly and indirectly owned and controlled AMH between 2015 and February 9, 2018.

**b. The Creation of KFM and Diversion of AMH Value for HPS and ARM**

21.     On information and belief, in 2014, AMH decided to ramp up its investment in an area of Oklahoma known as the STACK.[2] To transport its produced gas in Oklahoma, AMH had existing relationships with incumbent gatherers, and its oil was trucked and marketed by various other companies. However, AMH's owners resolved to take more control over AMH's midstream gathering needs. ARM and AMH, through Chappelle, began discussing jointly sponsoring a new entity to serve as AMH's midstream gatherer in the STACK.

22.     On information and belief, ARM saw an opportunity to finance and build out the gathering system, charge above-market rates to recoup its investment quickly, and flip the asset for a premium.  HPS soon jumped on board and agreed to invest, together with ARM, in the build-and-flip initiative, which would ultimately become KFM.

23.     On information and belief, early presentations of the proposed transaction detailed fees to be paid to KFM that were substantially greater than what AMH was being charged by its existing midstream gatherer.  Under the proposal, KFM's owners (including ARM and HPS) would benefit substantially on the back of AMH. HPS, along with Chappelle, championed the KFM project, in large part because Chappelle, together with Ellis and AMH's other owners, would become investors in KFM and realize profits through the exorbitant amounts to be paid by AMH.

---

[2] STACK is an acronym derived from the Sooner Trend oil field, Anadarko basin, and Canadian and Kingfisher counties. It refers to a geographic area in the Anadarko basin area of Oklahoma.

000018

24.     On information and belief, ARM took full advantage of the conflicting financial interests of AMH's owners and prepared a series of financial analyses touting the purported advantages of paying above-market rates to KFM—appealing to the potential rewards that would flow to AMH's owners *by virtue of their equity stakes in KFM*. These analyses—or "marketing materials," as one ARM official regarded them—were presented to Chappelle and others in the months before any gathering agreements were signed by AMH.

25.     On information and belief, AMH's owners viewed KFM's rate structure with an eye to the benefits those rates would have for KFM and its owners, including HPS, Chappelle and Ellis. The KFM rates—which were substantially above market—were never meaningfully negotiated by AMH.  AMH's Board and owners likewise failed to pursue competitive offers from gatherers other than KFM, and actively spurned offers from other midstream gatherers, including offers of lower gathering rates. Despite KFM's above-market rates, AMH's Board voted to approve the 2015 agreements.

26.     On August 31, 2015, Chappelle executed the 2015 Gas Gathering and Processing Agreement and Crude Oil Gathering Agreement (together, "**2015 Agreements**") on behalf of AMH and, despite his conflicting interests, on behalf of KFM also.

27.     On information and belief, the pricing terms of the 2015 Agreements were virtually identical to those first proposed by ARM.  The gas base rates were well above market rates, and the capital recovery fees in both agreements made the rates exorbitant.  Indeed, the fees were so high that at times AMH was forced to sell its oil and gas at a loss.

28.     Both 2015 Agreements also included purported dedications of leasehold interests along with boilerplate language characterizing the agreements and their dedications as running with the land. These provisions purported to commit AMH, and any successor in interest to AMH,

to paying the inflated rates to benefit KFM. In addition, both 2015 Agreements included a promise by AMH to "convey or assign" easements or rights-of-way to KFM for the purposes of building and maintaining KFM's gathering systems. But, as the agreements explicitly state, the easements or rights-of-way were not conferred by the agreements themselves. Instead, they were to be conveyed to KFM sometime in the future, if at all, and only "where reasonably requested."

29.     On information and belief, within weeks of execution of the 2015 Agreements, AMH's managers openly questioned the exorbitant fees the company had agreed to pay.  For every above-market dollar paid by AMH to KFM, only a small fraction would make it back to AMH.  In effect, the value of AMH's production assets was being diverted to benefit KFM (in which AMH had no equity interest) and KFM's equity ownership, including HPS and ARM.  Indeed, AMH learned that KFM was charging its other customers substantially less than it was charging AMH— which provided the overwhelming majority of KFM's business, and yet paid a higher price.

30.     On information and belief, the exorbitant fees made it difficult for AMH to remain profitable and harmed AMH's long-term value.  AMH was loaded with debt, and nearly all of AMH's cash had been spent on the STACK play, leaving little for day-to-day operations.  By mid-2016, Moody's downgraded AMH's debt, citing a "weak liquidity position, expected deterioration in credit metrics through 2017, and increasing refinancing risk."  KFM's outrageous fees put AMH at risk of breaching its debt covenants.

31.     On information and belief, by the end of 2016, AMH was running at a net loss and was severely inadequately capitalized and cash-flow insolvent.  AMH's financial problems were a concern for HPS.  Between 80% and 90% of KFM's revenue was derived from AMH's gas and oil production, and KFM would be practically worthless if it lost its gathering contract with AMH.

8

This was a particular concern to HPS, which through its direct equity stake *and* its ownership of HMI held a larger interest in KFM than other owners of HMI.

32.     In addition, around the same time in 2016, a bankruptcy court had entered orders rejecting gathering agreements substantively identical to the 2015 Agreements on the ground that they did not constitute covenants that ran with the land. *In re Sabine Oil & Gas Corp.*, 547 B.R. 66 (Bankr. S.D.N.Y. 2016); *In re Sabine Oil & Gas Corp.*, 550 B.R. 59 (Bankr. S.D.N.Y. 2016). Thus, HPS was concerned that KFM would suffer the same fate if (or more appropriately, when) AMH needed to seek bankruptcy protection.  Thus, in 2016, AMH and KFM sought to amend the 2015 Agreements, but did so with an eye towards preserving the value of KFM for the "build-and-flip" objective.

33.     For its part, ARM sought to ensure that any restructuring of KFM rates would not reduce its net present value (and the value of ARM's investment in KFM), and landed on a proposal that would reduce the capital recovery fee in the gas gathering agreement. Critically, however, that proposed rate change was expected to have no negative effect on KFM, as the base gathering rates were actually increased.

34.     On December 1, 2016, AMH executed amended gathering agreements with KFM to supplant the 2015 Agreements (the 2016 Gas Amendment and 2016 Crude Oil Amendment are referred to collectively as the "**2016 Amendments**").  The rate changes set forth in the 2016 Amendments were never approved by the AMH Board or even put to a vote of the AMH Board or AMH's stakeholders.

35.     On information and belief, the 2016 Amendments were also designed, in part, as an attempt to insulate KFM's gathering agreements from challenge in bankruptcy similar to that in *Sabine*. Indeed, HPS threatened to withhold AMH's funding unless it accepted the amendments,

which HPS believed were necessary to protect its investment in KFM. Thus, the 2016 Amendments included a host of additional provisions intended to transform the 2015 Agreements into covenants running with the land, including a purported conveyance of transportation interests. AMH received nothing in exchange for those purported conveyances.

36.     On information and belief, the 2016 Crude Oil Amendment additionally required KFM to construct a system capable of gathering up to 50,000 barrels per day for AMH. KFM failed to construct such a system and never met the capacity threshold, but charged AMH for every barrel of oil that AMH paid another party to transport away—meaning KFM was being paid for doing nothing, and AMH was paying twice to move the same barrel of oil.

37.     On information and belief, between June 2016 and October 2019, AMH paid KFM over $120 million of exorbitant fees just under the gas gathering agreement alone, and millions more for transporting oil that KFM was incapable of transporting (and did not in fact transport).

38.     On information and belief, ARM and HPS profited handsomely from this diversion of value from AMH to KFM, as designed. In connection with the business combination in February 2018, ARM sold its interest in KFM for hundreds of millions in cash and stock—a substantial multiple of the initial capital investment that ARM had made less than three years earlier.

**B.    The February 2018 Business Combination and Related Transactions to Benefit HPS at the Expense of AMH and its Stakeholders**

39.     On February 9, 2018, AMH entered into a business combination with Silver Run II Acquisition Corporation ("**Silver Run**") and KFM (the "**Business Combination**"). Silver Run was a special purpose acquisition vehicle founded and run by Riverstone VI Alta Mesa Holdings, L.P., which had raised over $1 billion through an IPO in 2017. As a result of the Business Combination, AMH and KFM both became wholly-owned subsidiaries of a holding company,

000022

SRII Opco, LP ("**SRII Opco**").  AMH continued to be managed by its general partner, AMH GP, which was majority owned and controlled by SRII Opco. The public company formerly known as Silver Run, which was rebranded as Alta Mesa Resources, Inc. ("**AMR**"), owned 100% of SRII Opco's general partner interest and a substantial portion of the limited partner interests in SRII Opco.  AMR was, at all relevant times after February 2018, beneficially owned by a number of entities, with HPS and HMI both holding substantial shares.

40.     The Business Combination stemmed from three related contribution agreements executed on August 16, 2017 memorializing the terms of the Business Combination: the Alta Mesa Contribution Agreement, the Kingfisher Contribution Agreement, and the Riverstone Contribution Agreement (collectively, the "**Contribution Agreements**").  The Contribution Agreements and the terms of the Business Combination transaction embodied therein reflected a structure designed to "cash out" the owners of KFM—who sought to consummate their "build-and-flip" strategy and realize the fruits of propping up KFM on the backs of AMH's creditors—and provide going-forward equity ownership in Silver Run/AMR to AMH's owners.  Over $800 million in cash, along with significant equity, was paid to HPS, ARM and the other KFM owners in consideration for AMR's purchase of KFM and AMH.

41.     In addition, the Business Combination contemplated and involved several related transactions intended to benefit HMI and its owners, including HPS, at the expense of AMH and its creditors.

42.     First, on February 8, 2018—two days after Silver Run stockholders approved the Business Combination through the Contribution Agreements, and one day before the Business Combination closed—AMH assigned its remaining non-STACK assets (the "**Non-STACK Assets**") to High Mesa Holdings, LP ("**HMH**"), a subsidiary of HMI, *for no consideration* (the

11

"**Non-STACK Assignment**").  Indeed, neither AMH nor HMI obtained any third-party valuation or fairness opinion regarding the zero-dollar price paid by HMI/HMH.  At the time of the assignment, the Non-STACK Assets were valued at tens of millions of dollars and were generating positive cash flow prior to the assignment.

43.     Second, in connection with the Business Combination and the transfer of the Non-STACK Assets by AMH, AMH entered into a management services agreement with HMI (the "**HMI MSA**").  Chappelle signed the HMI MSA on February 9, 2018, on behalf of both AMH and HMI.  Under the HMI MSA, AMH was obligated to provide payroll, expenses, and other services to HMI in exchange for HMI's reimbursement of all expenses AMH incurred on behalf of HMI, along with a nominal $10,000/month management fee.

44.     Specifically, AMH agreed to provide the cash to pay HMI's employees, general and administrative overhead, and service expenses; among the categories for which AMH was entitled to reimbursement were direct payroll, indirect payroll, billable payroll, overhead allocation, and invoices paid on behalf of HMI.  The nominal monthly management fee was also well-below market standards.

45.     On information and belief, HMI was not an operating company prior to assignment of the Non-STACK Assets, and would have been unable to manage its newly-assigned assets without AMH's assistance.  However, AMH never consulted any third parties or did any studies of what an appropriate monthly management fee would be, or whether HMI was able or likely to pay the amounts that would be owed to AMH.  Nor did AMH or its owners (also owners of HMI) seek or offer any guaranty or other security for payment of the obligations to AMH under the HMI MSA.

000024

46.     Instead, and while AMH had no obligation to support HMI (in which it had no interest), or the further operation of the Non-STACK Assets post-assignment, HMI and its owners (including HPS) ensured any financial risk associated with the assignment was borne by AMH and its creditors—not HMI or its shareholders.  Ultimately, the risk thrust on AMH by HMI and its shareholders, including HPS, came home to roost, as HMI failed to pay approximately $10 million owed to AMH under the HMI MSA.

47.     On or about January 24, 2020, HMI commenced a voluntary chapter 7 bankruptcy case in this Court.  The amounts owed to AMH under the HMI MSA, totaling approximately $10 million, exclusive of contractual interest at 10% per annum, remain outstanding and unpaid.

48.     In essence, as a result of the Non-STACK Assignment and the HMI MSA, HMI and its shareholders (including HPS) received the value of the Non-STACK Assets and the services rendered to operate those assets for no consideration.

### JURY TRIAL DEMANDED

49.     The Trust hereby demands a jury trial on all issues.

### CAUSES OF ACTION

### Count 1: Avoidance and Recovery of Fraudulent Transfer against HPS and ARM

### (Gathering Agreements)

### (11 U.S.C. §§ 544, 548, 550; Tex. Bus. & Com. § 24.001, et. seq.)

50.     The Trust repeats and realleges the allegations set forth above.

51.     On information and belief, the 2015 Agreements and 2016 Amendments, as such agreements were further amended from time to time (collectively, the "**Gathering Agreements**"), were devised as a mechanism to divert value away from AMH and its creditors to benefit KFM's owners, particularly HPS and ARM, through exorbitant above-market fees, overbearing terms and obligations imposed on AMH that had no industry precedent.

13

52.     On information and belief, the obligations of AMH under the Gathering Agreements (the "**Gathering Agreement Obligations**"), and the payments made by AMH thereunder, which during the period of September 2015 through September 11, 2019 (the "**AMH Gathering Payments**") totaled over $120 million, were incurred and made with actual intent to hinder, delay, or defraud any entity to which AMH was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

53.     On information and belief, AMH received less than reasonably equivalent value in exchange for incurring the Gathering Agreement Obligations and making the AMH Gathering Payments.

54.     On information and belief, at the time the Gathering Agreement Obligations were incurred, and each of the AMH Gathering Payments were made, AMH (i) was insolvent, or became insolvent as a result of such transfer or obligation, (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with AMH was an unreasonably small capital, or (iii) intended to incur, or believed that AMH would incur, debts that would be beyond AMH's ability to pay as such debts matured.

55.     On information and belief, some or all of the AMH Gathering Payments were made to or for the benefit of an insider for an antecedent debt, when AMH was insolvent, and when KFM, HPS and ARM had reasonable cause to believe AMH was insolvent.

56.     The Gathering Agreement Obligations and the AMH Gathering Payments constitute fraudulent transfers avoidable by Plaintiff under 11 U.S.C. §§ 544, 548 and Tex. Bus. & Com. § 24.001 *et seq*.

000026

57.     The Gathering Agreement Obligations were incurred, and the AMH Gathering Payments were made, for the benefit of HPS and ARM as the owners of KFM and, as applicable, subsequent transferees of any distributions made by KFM of the proceeds of such transfers.

58.     Upon avoidance of the obligations and transfers alleged herein, Plaintiff is entitled to recover judgment from Defendants pursuant to 11 U.S.C. § 550(a)(1) and/or (2).

59.     At the time the Gathering Agreement Obligations were incurred and the Gathering Agreement Payments were made, a creditor existed who held an unsecured claim allowable under 11 U.S.C. § 502.

## Count 2: Avoidance and Recovery of Fraudulent Transfer against HPS

## (Non-STACK Assignment)

## (11 U.S.C. §§ 544, 548, 550; Tex. Bus. & Com. § 24.001, et. seq.)

60.     The Trust repeats and realleges the allegations set forth above.

61.     On information and belief, the Non-STACK Assignment was intended to divert value away from AMH and its creditors to benefit HMI's owners, particularly HPS, by conveying the Non-STACK Assets, which were valued at tens of millions of dollars and were generating positive cash flow, for no consideration.

62.     On information and belief, the transfer of the Non-STACK assets pursuant to the Non-Stack Assignment was made with actual intent to hinder, delay, or defraud any entity to which AMH was or became, on or after the date that such transfer was made, indebted.

63.     On information and belief, AMH received less than reasonably equivalent value in exchange for transferring the Non-STACK Assets pursuant to the Non-STACK Assignment.

64.     On information and belief, at the time of the Non-STACK Assignment, AMH (i) was insolvent, or became insolvent as a result of such transfer, (ii) was engaged in business or a

15

transaction, or was about to engage in business or a transaction, for which any property remaining with AMH was an unreasonably small capital, or (iii) intended to incur, or believed that AMH would incur, debts that would be beyond AMH's ability to pay as such debts matured.

65.     On information and belief, the Non-STACK Assignment was made in whole or in part, to or for the benefit of an insider for an antecedent debt, when AMH was insolvent, and when HMI and/or HPS had reasonable cause to believe AMH was insolvent.

66.     The Non-STACK Assignment was made for the benefit of HPS as the owner of HMI and, as applicable, subsequent transferee of any distributions made by HMI of the proceeds of such transfer.

67.     The Non-STACK Assignment constitutes a fraudulent transfer avoidable by Plaintiff under 11 U.S.C. §§ 544, 548 and Tex. Bus. & Com. § 24.001 *et seq*.

68.     Upon avoidance of the transfer alleged herein, Plaintiff is entitled to recover judgment from HPS pursuant to 11 U.S.C. § 550(a)(1) and/or (2).

69.     At the time such transfer was made, a creditor existed who held an unsecured claim allowable under 11 U.S.C. § 502.

### **Count 3: Avoidance and Recovery of Fraudulent Transfer against HPS**

### **(HMI MSA)**

### **(11 U.S.C. §§ 544, 548, 550; Tex. Bus. & Com. § 24.001, et. seq.)**

70.     The Trust repeats and realleges the allegations set forth above.

71.     On information and belief, the HMI MSA was a vehicle through which HMI and its shareholder, HPS, shifted the financial burden and risk of operating the Non-STACK Assets to AMH and its creditors.  By executing the HMI MSA, AMH became obligated to pay HMI's employees, general and administrative overhead, and services expenses of operating the Non-

16

STACK Assets—which had been transferred by AMH for no consideration—in exchange for only a nominal, below-market management fee and a soon-to-be-broken promise of expense reimbursement.  Ultimately, HMI failed to pay approximately $10 million owed to AMH under the HMI MSA for services AMH provided and expenses it advanced, despite HMI and its shareholders, including HPS, reaping the benefits of such services.

72.     On information and belief, the obligations of AMH under the HMI MSA (the "**MSA Obligations**"), and the payments made for the benefit of HMI thereunder from the period of February 9, 2018 through termination of the MSA (the "**MSA Payments**"), were incurred and made with actual intent to hinder, delay, or defraud any entity to which AMH was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

73.     On information and belief, AMH received less than reasonably equivalent value in exchange for incurring the MSA Obligations and making the MSA Payments.

74.     On information and belief, at the time the MSA Obligations were incurred, and each of the MSA Payments were made, AMH (i) was insolvent, or became insolvent as a result of such transfer or obligation, (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with AMH was an unreasonably small capital, or (iii) intended to incur, or believed that AMH would incur, debts that would be beyond AMH's ability to pay as such debts matured.

75.     On information and belief, some or all of the MSA Payments were made to or for the benefit of an insider for an antecedent debt, when AMH was insolvent, and when HMI and/or HPS had reasonable cause to believe AMH was insolvent.

76.     The MSA Obligations and the MSA Payments constitute fraudulent transfers avoidable by Plaintiff under 11 U.S.C. §§ 544, 548 and Tex. Bus. & Com. § 24.001 *et seq.*

17

77.    The MSA Obligations were incurred, and the MSA Payments were made, for the benefit of HPS as the owner of HMI and, as applicable, subsequent transferee of any distributions made by HMI of the proceeds of such transfers.

78.    Upon avoidance of the obligations and transfers alleged herein, Plaintiff is entitled to recover judgment from HPS pursuant to 11 U.S.C. § 550(a)(1) and/or (2).

79.    At the time the MSA Obligations were incurred and the MSA Payments were made, a creditor existed who held an unsecured claim allowable under 11 U.S.C. § 502.

## REQUEST FOR RELIEF

THEREFORE, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon trial of this cause, judgment be entered in Plaintiff's favor, and against Defendants, for the following:

a.    For a determination that the Gathering Agreement Obligations and AMH Gathering Payments were fraudulent transfers within the meaning of 11 U.S.C. §§ 544, and 548 and Tex. Bus. & Com. § 24.001, *et seq.*, and for entry of judgment against HPS and ARM in the amount of the avoided transfers, but in any event no less than $85 million;

b.    For a determination that the Non-STACK Assignment was a fraudulent transfer within the meaning of 11 U.S.C. §§ 544, and 548 and Tex. Bus. & Com. § 24.001, *et seq.*, and for entry of judgment against HPS in the amount of the avoided transfer, but in any event no less than $42 million;

c.    For a determination that the MSA Obligations and MSA Payments were fraudulent transfers within the meaning of 11 U.S.C. §§ 544, and 548 and Tex. Bus. & Com.

000030

§ 24.001, *et seq.*, and for entry of judgment against HPS in the amount of the avoided transfers, but in any event no less than $12 million;

d. Pre- and post-award interest at the highest rate and amount authorized by applicable law;

e. An award of costs related to this proceeding, including attorneys' fees, as permitted by contract or applicable law; and

f. Such other and further relief at law or in equity as the Court deems just and appropriate.

Dated:  September 10, 2021

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, PC

*/s/ Joseph R. Dunn*

Joseph R. Dunn (*Pro Hac Vice Pending*)
Attorney-in-Charge
CA State Bar No. 238069
jrdunn@mintz.com
3580 Carmel Mountain Rd.
Suite 300
San Diego, California 93210
T: (858) 314-1500
F: (858) 314-1501

Abigail V. O'Brient (*Pro Hac Vice Pending*)
CA State Bar No. 265704
aobrient@mintz.com
2029 Century Park East
Suite 3100
Los Angeles, California 90067
T: (310) 586-3200
F: (310) 586-3202

19

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>David Dunn, as Trustee of the AMH Litigation Trust | DEFENDANTS<br>HPS Investment Partners, LLC<br>ARM Energy Holdings, LLC<br>ARM Midstream, LLC<br>Asset Risk Management, LLC |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>See attached | ATTORNEYS (If Known)<br><br>See attached |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of fraudulent transfers (11 U.S.C. Sections 544, 548, 550; Tex. Bus. & Com. Section 24.001, et seq.)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒[1] 13-Recovery of money/property - §548 fraudulent transfer
☒[2] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $  At least $139 million |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Alta Mesa Resources, Inc., et al. | BANKRUPTCY CASE NO.<br>19-35133 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District of Texas | DIVISION OFFICE<br>Houston | NAME OF JUDGE<br>Judge Marvin Isgur |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Joseph R. Dunn | | |
| DATE<br><br>September 10, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Joseph R. Dunn | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**ATTACHMENT TO ADVERSARY PROCEEDING COVER SHEET**

**ATTORNEYS FOR PLAINTIFF:**

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
Joseph R. Dunn
CA SBN 238069 (*Pro Hac Vice Pending*)
jrdunn@mintz.com
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: 858-314-1500
Facsimile: 858-314-1501

Abigail V. O'Brient
CA SBN 265704 (*Pro Hac Vice Pending*)
avobrient@mintz.com
2029 Century Park East, Suite 3100
Los Angeles, CA 90067
Telephone:  310-586-3200
Facsimile:  310-586-3202
T: (512) 647-6100
F: (512) 647-6129

**ATTORNEYS FOR DEFENDANT HPS INVESTMENT PARTNERS, LLC**

VINSON & ELKINS LLP
Harry A. Perrin
hperrin@velaw.com
Michael A. Garza
mgarza@velaw.com
First City Tower
1001 Fannin Street, Suite 2500
Houston, TX 77002
Tel: (713) 758-2222

Manuel G. Berrelez
mbarrelez@velaw.com
Jordan W. Leu
jleu@velaw.com
Trammel Crow Center
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700

David S. Meyer
dmeyer@velaw.com
The Grace Building
1114 Avenue of the Americas
New Yok, NY 10036
Tel: (212) 237-0000

**ATTORNEYS FOR DEFENDANT ARM ENERGY HOLDINGS, LLC**

Unknown

**ATTORNEYS FOR DEFENDANT ARM MIDSTREAM, LLC**

Unknown

**ATTORNEYS FOR DEFENDANT ASSET RISK MANAGEMENT, LLC**

Unknown